until July of 2012, that during these discussions, Orange already engaged in misconduct, and that following the break-off of the relationship, Orange continued to engage in misconduct by copying the application, which is the subject of the NDA. Well, when was – much of this appears to turn on the use of a password. When was the password provided? It was provided a week before the NDA was signed, but I think, Your Honor, that there are actually two lines of reasoning. The first one under Simula has nothing to do with a password, and the second one, under the second standard set forth in Simula, which is does the dispute have its origin in the NDA, that part involves the passcode, and I will get to it in just one second. But the argument that I'm making now under Simula is that the allegations of the complaint touch on matters covered by the contract. Well, touch – I mean, one of the problems with the word relate, everything relates in some fashion. Touch really isn't much of a standard. Is the fact that it may have something to do with the same subject matter enough by itself? No, it doesn't, but here in this case, the allegation is that the parties negotiated at a torrid pace between February and July. Orange engaged in misconduct even before the end of the discussions, and then almost immediately thereafter, Telesocial alleges that Orange continued to engage in misconduct by copying the application that's the subject of the NDA. The subject matter of the NDA is the application, is the access to the application, Orange's evaluation of the application, and Orange's use of the application. And the allegations in this case touch on all this. The conduct that's alleged here involves the application access, evaluation, and use of the application. That's why, in this case, we believe that the allegations clearly touch matters covered by the NDA. Now I will get to the second point. But for the most part, the argument, at least the argument as currently asserted by Telesocial, is that – is not that Orange took advantage of information provided to it during the negotiations, but rather Orange said, gee, this is a good application, and then proceeded to hack into the system separate and apart from everything that happened as part of the negotiations. I understand their argument now. And that's the second prong of the second test under Simula, which is does the dispute have its origin in the NDA? And we believe that yes, because all of the alleged torts and the alleged breaches of terms of use occurred by means of this access code that was provided under the NDA. But it wasn't provided under the NDA. It was provided before the NDA was signed. Well, this is what Telesocial is saying now, and that's its third version of whether the access code was given under the NDA. There was 15 months of litigation in France, and during that entire period Telesocial said the access code was given under the NDA. The original complaint, judge, here, was filed on September 2nd of last year. September 2nd. Three weeks, and I agree, it doesn't mention the NDA. It mentions the pass code. It says that the misconduct occurred by means of the pass code. Not a word about the NDA. Three weeks later, Telesocial files its second petition in Paris. There are seven express references in that document to the fact that the pass code was given under the NDA, and that's a French law agreement. The references are paragraphs 58, 62, 68, 69, 87, 90, and 91 of the French complaint, which was filed three weeks after the original complaint in this case. Now, the gist of Telesocial's argument in Paris, and they had to say it to get the French court to exercise jurisdiction. The gist of Telesocial's argument in Paris is that this was a password-protected application. The password was given under the NDA, and shortly after the end of the negotiations, Orange used the password improperly to access the application and copy the features of the application. It is the same case as here. There's a chart in the French pleading at paragraph 63 of the pleading they filed three weeks after the original complaint here. There's a chart of all the instances of Orange's misconduct, alleged misconduct. It's at paragraph 63. There's a substantially identical chart in the original complaint at paragraph 21, and there's a substantially identical chart of misconduct at paragraph 41 and 42 of the First Amendment complaint. Same acts of misconduct, but in France, Telesocial has repeatedly said for 15 months, all of this occurred by means of an access code given under the NDA. This court has a responsibility to look through creative pleading, and we believe that Telesocial is a stop. It was the same case argued in France and here. They made the same allegations of hacking in France and here. How did the district court respond to your argument that you made before the district court on this precise issue? The district court, I believe that the district court misapplied the standard on the simula. They applied the district court. What did the district court say in relationship? The district court said it's irrelevant. I take it you made this exact same argument to the district court citing the same things that you cited to us, correct? That's right. And so what did the district court say in its opinion in relationship to that argument? The district court said it is irrelevant because the education of all the claims here do not require an analysis of the rights under the NDA, and that's not the standard. And we have to find out if the district judge was clearly wrong, correct? That's correct. That's your burden. That's right. And the district judge cited only one case. It was Manetti-Farrow, and Manetti-Farrow involved a form selection clause which was completely different. The form selection clause in Manetti-Farrow said that it governed disputes regarding the interpretation and performance of the contract. It didn't say any and all disputes, controversies, questions arising out of or related to the agreement. Let me ask you a question, just an assumption. I want you to assume that one year after the termination of the contract, that the Petitioner hired people to break in and enter and steal records dealing with the subject matter of the contract. Make that assumption. How would that relate to or arise out of the agreement? Well, I agree, Judge, that your answer would be it doesn't. My answer would be it probably doesn't. So how is that assumed situation different from, so different from what we have, that we would say the district judge was clearly wrong in his assumption? Right. I think there are two answers to this. The first one is that all of the instances of misconduct occurred by means of the access code provided under the NDA. That's the first response. And the district court never addressed this point. The district court looked at whether the claims in this case require interpretation of the NDA. That's the first thing. And the second thing is that this is not the case pleaded in the complaint. The hypothetical that Your Honor just gave me is not the case pleaded in the complaint. No, I pushed a little further because I want to make a point. But the case pleaded in the complaint is that there are negotiations over a short period of time, and immediately after the end of the negotiations, the defendant allegedly engages in misconduct by copying the application that's subject of the NDA. And I believe that this is a different situation. I would like to address, Judge, I have very little time. As a matter of contract interpretation, they are completely wrong. The definition of confidential. Before you run out of time, I would like you to address the other point you mentioned before, which is why can't this be taken care of later on appeal? What's so irreproachable about it? We've identified four reasons why the forum selection clause becomes a nullity if the case goes on. It becomes a nullity. Not just because there are 11. For what? Well, this Court actually has said in the reverse situation, where the issue is enforcing a U.S. forum selection clause, and there's a litigant somewhere outside of the U.S. I'm still waiting to see the harm to your client. You may say generically forum selection clause will be less favorable. Our decision turns on the facts of this case. And why can't that subject be brought up on appeal later? Well, I will cite one case. Gallo v. Andina Licoris, 446 F. 3rd, 984, 9th Circuit, 2006. This is a case where the district court, the circuit court, enjoined, directed the district court to issue an anti-suit injunction directing the end of the foreign litigation because it said we have a duty to protect international commerce, and we have a duty to protect the forum selection clause because in this circuit I can't they be protected on appeal? They could be. I mean, suppose the case goes forward. You lose. You appeal. The 9th Circuit says, nope, the forum selection clause should have been enforced. I mean, mandamus requires more. And you told me at the beginning you were going to explain why it was that your client would be damaged in a way not correctable on appeal, and I'm waiting to hear the answer to that question. I believe that on the Gallo, this court has held that the forum selection clause becomes a nullity. The U.S. forum selection clause becomes a nullity if litigation abroad goes on. So how is your client damaged in a way that's not correctable on appeal? Because we have 11 individual defendants who would need to travel to the U.S. for trial. We have between 15 and 20 witnesses who would need to travel to the U.S. for trial. And in Varsic and Pacific Current Foundry and the Gallo case, this court has made clear that when that happens, there's prejudice that cannot be corrected on direct appeal. There's harm to international commerce. There's harm also to the respect due of foreign courts, which is one of the reasons forum selection clauses are enforced. And finally, there's also harm because Telesocial has circumvented the judicial process both here and in France. I understand your argument. And if we were hearing it on appeal, our decision might well be different. But we've made it clear in Bauman, a very well-written opinion, that there are certain factors involved. And we're going to have to based upon those factors. And we certainly put a high burden upon anyone who wants to have mandamus. I don't see an analysis of the factors that is as persuasive as the rest of your argument. Do you feel that those factors really, we can say, based on those factors, the judge was clearly erroneous? I do believe so, Judge, first because there is nine circuit precedent saying that when witnesses, individuals are forced to travel to the United States for trial, it is prejudice that cannot be corrected on direct appeal. We address it in the brief. We address the problem of respect to foreign courts. We address the fact that Telesocial has circumvented the judicial process in France and will continue to do it. And the Gallo case makes clear that if this litigation continues, the Foreign Selection Clause becomes a nullity. And what's true for U.S. Foreign Selection Clause has to be also true for foreign Foreign Selection Clause. The judge found there was kind of a separation or a division between these two. And one part of it can easily be tried in Paris where it's on file now. But he found a difference, and you disagree with his difference. But we have to find he was clearly erroneous in making that difference. How would you argue that he was clearly erroneous? The district judge applied the wrong legal standard to construe the Foreign Selection Clause. Wrong legal standard under Baumann? No. The district court was the standards under Baumann is did the district court make a clear error of law? Yes. Is there prejudice that cannot be corrected on direct appeal? Yes. Are the issues important here? And we believe that there's clear error because the district court misapplied the standard. And we believe that there's prejudice that cannot be corrected on direct appeal even under this decision in Gallo where this court said that the Foreign Selection  What's true for a U.S. Foreign Selection Clause has to be true for a foreign Foreign Selection Clause. I'd just like to reiterate Judge Clifton's question about you say it cannot be corrected on appeal. Our North Circuit cases have not said that litigation costs alone justify mandamus. This case also does not involve an oft-repeated error or raise new and important problems. Tell me why this is just not a routine and fact-intensive question of contract interpretation. It's not a question of cost, Your Honor. It's true that it's not an oft-repeated error, but it's a case where if the litigation proceeds under this Court's analysis in Gallo, the Foreign Selection Clause becomes a nullity. And this Circuit has said many times that enforcing Foreign Selection Clauses is a very strong public policy of this forum. Thank you. I would really like to have rebuttal time. I know you ---- You tried. We wouldn't let you. We'll still give you an opportunity for rebuttal. Thank you. And now we'll hear from the Real Party and Interest Telesocial. May it please the Court, my name is Benjamin Singer. I'm appearing on behalf of Real Party and Interest Telesocial. I believe there are two simple dispositive failures that make this a very easy case. First, the District Court reviewed all the arguments, all the facts alleged in the complaint, as well as a pile of facts from outside the complaint that the party submitted. And after doing that analysis, he concluded Orange has indeed failed to connect the First Amendment complaint to the NDA. That is dispositive. The parties did not choose the Broadest Forum Selection Clause. And it has never been disputed, nor could it be, that the Forum Selection Clause in the NDA would not reach claims that have no connection to that contract. Defendant's motion required them to show that connection. They did not do so because none exists, because you don't steal what you've already been given. That's the first dispositive point. Second, at this Court, petitioners have failed to identify the kind of prejudice or harm that would justify mandamus. They do not somehow get a greater entitlement to mandamus relief because the servers they hacked into and stole from are a long plane ride away from where they live. That's not how the rule works. Orders denying dismissal or transfer based on a Forum Selection Clause are almost never appropriate for mandamus review. We here, with Judge Donato's well-reasoned, articulated six-page order, are a far cry from Sunshine Beauty, where the Court was so far outside of his discretion because he ordered orally from the bench to transfer a case without considering that there was a Forum Selection Clause at all. May I ask you a hypothetical question? What claims could Telesocial have that would relate to the nondisclosure agreement but not arise out of it? I believe that the — if we look at the Ninth Circuit precedent, relate to would only cover, really, claims that are for a breach of the agreement itself. There may be in the performance language of some of those relate to cases, there may be some other claims. It doesn't appear in the case anywhere. When we add the arise out of language, what we get is the inclusion of tort And if we look at Simula, for example, Simula does not do what the petitioners needed to do. It does not change the rule that there has to be a substantial connection between the claims and the contract. It does not create a but-for rule that the District Court specifically rejected. And when it stated that standard, that the origin or genesis, when you look at the way it applied that language, which is the most important part, because as Your Honor pointed out, the standard is not that specific. When it applied it, what it found was that Simula's claims, each and every one of them, was either for a breach of an NDA that had been subsumed by a contract with an arbitration clause or required adjudication of that agreement. Thank you. Would you respond to the argument made by counsel that the judge was really wrong on the facts, as indicated by your brief filed in the French court, that there is a real connection between what happened here and the clause in question? I believe that Judge Donato got it exactly right. First, I think it's important to clarify that there are no claims pending in France. Telesocial was sued in France for breach of the NDA. In response, it filed a pre-action ex parte thing to get discovery to see what claims it may have. But he was referring to a paper that you filed in France, which would be an admission on your part. So what's the answer to his challenge? Well, when you say an admission on our part, what I heard counsel say is that they believe there's been an estoppel. They did not argue estoppel to the district court. The district court did not find that there was an estoppel, and this court cannot find that there was an estoppel. Was that issue raised in the district court? There was, I believe, a mention in the briefing of estoppel, and the district court made no determination. And your view is that that entire discussion between counsel and the court dealt with estoppel and nothing else? No. I believe that that discussion, which was a little bit convoluted and hard to follow, frankly, I believe that Judge Donato did rule quite clearly on the significance of the French proceedings. He did a fact-intensive analysis of a big pile of documents, and in his order, he was on page 6 at line 11, he was very clear that, quote, nothing in the French documents shows that the NDA form selection clause applies to the complaint in this case. And I think that that is a decision that is entitled to deference. How do you – the Gallo case is a little concerning. It seems to sort of stick out like a sore thumb when you go through this case. How do you interpret the Gallo case as – or do you interpret it the same way that counsel does as far as its application to these facts are concerned? I don't interpret it the same way. I believe that the important thing from this Court's precedent is, as Her Honor pointed out, is that we don't consider normal litigation costs sufficient for mandamus. The harms that Petitioner tried to pile in to normal litigation costs were all rejected by the district court. The distance of travel, as I already said, does not support it. And the rest, the harms to other people, is not in the case law. And so when we take the fact that Judge Donato did not err and the fact that there is no prejudice or harm that's not correctable on appeal, each of those is dispositive by itself. But when we take the Bowman factors from that very well-written decision, the fourth and fifth factors here are conceded by Petitioner. They make no mention of them. But Bowman was present when Gallo was written. Certainly it has some application to the case. Or is it just completely distinguishable from our facts? I'm having trouble with trying to put Gallo together with Bowman. And as I recall, Gallo was after Bowman. I'll have to fall on my sword and say that I'm not intimately familiar with the Gallo decision. I don't believe that that case was cited by Petitioners in their briefing. Was it raised before the district judge? I don't believe so. Does the dispute here relate to the non-disclosure agreement? Absolutely not. As the district court correctly ruled, there is no tie at all. We are not proceeding on information that was disclosed under the NDA. And there is no but-for test. You say it was disclosed under the NDA. Are you excluding the password? I think the password first was not disclosed under the NDA. That was not alleged in this action. But it also was not in the first amended complaint. And the precedent of this circuit is clear that the superseded pleading has no legal effect. So when Petitioners asked, well, let's look back at what they said, and does that somehow stretch the forum selection clause, which is in a written contract, the answer is no. And that's what you're talking about now. It's not a hard inference to say that a non-disclosure agreement, you've got ongoing transaction negotiations, and something is handed over before a non-disclosure agreement is signed. But it's not a long stretch to say that non-disclosure is understood as well. If Orange employees suddenly started using that password for all sorts of things, you'd expect Telesocial to beef about it, wouldn't you? Not in respect to the fact that it was NDA-protected information. Telesocial did make that representation, and it was a factual mistake. And that factual mistake does not create an estoppel, and it does not somehow rewrite the forum selection clause in this contract to cover theft. By its very nature, the NDA is about voluntary disclosure of information. And the password was voluntarily disclosed. That's correct. And the operative facts in the first amended complaint do not rely on the password at all. This is not artful pleading. Artful pleading, as followed in those cases that petitioners cite, deals with the idea that, well, you plead some facts, and it could have a cause of action based on those facts that would be covered by the clause. But you leave that cause of action out in an effort to avoid the clause. That is not what happened here. First, no causes of actions were dropped. If a fact that is not important to the claims in this court is removed, that means that there are independent claims on independent facts that can proceed just as Judge Donato found. I'm not sure how you can disregard facts simply by deciding not to include them. You say you can't disregard a claim by deciding not to include it. Even more puzzled is how you could disregard a fact by not including it, by electing not to include it in a pleading. I mean, the fact is a fact. And the fact is that there was a disclosure to Orange, and that disclosure was taken advantage of in some fashion by Orange. That's a fact, isn't it? It is a fact, but if there are claims. So the password, even in the original complaint, and again, let's be clear, the original complaint did not contend that the password was protected under the NDA because it is not. That was pled in relation to the CFAA claims in the State Corollary as something that related to an impermissible access. What happened after that was pled was it was determined two things. One, that the nate and that complaint was the result of a diligent investigation, even if an imperfect pleading. That happens all the time. And when subsequent investigation identifies a problem or something that needs to be fixed, what the courts expect you to do is fix it. It was dropped because what we learned is that the password, the way it technically functions, was not the kind of access barrier that would trigger a CFAA claim. But Orange had, in fact, engaged in the type of conduct that the CFAA specifically prescribed. And if those facts exist, then there's nothing in the case law that says, well, if there are other facts that could also somehow support a separate claim, that all of the claims based on your conduct is swept within the clause. What that would essentially mean is that the form selection clause means that if I do something bad that's covered by the clause, then everything else bad that I do is also covered by the clause. And had the parties intended the clause to operate that way, they could have written it to do so. But they did not. How about the second Bellman factor? Petitioner will be damaged or prejudiced in a way not correctable on appeal. Correct. And I think that factor weighs heavily against mandamus here. So you acknowledge that if you had prevailed today, you'd go on, the case continues, Orange could come up on appeal and say, wait a minute, this case should never have been litigated in California because we've got this form selection clause. And district court or the Ninth Circuit at that point could say, that's right. You've all wasted your time for the last couple of years. Is that a good thing? I'm certain that they will say that. They will be wrong then, just as they are wrong now. And, no, defendants' efforts to avoid, whether it's once, twice, or three times, a very clear, correct, and well-written order is not a good thing. But it is not an issue of the scope of form selection clauses. Thank you. Thank you. Thank you. I would like to make three points. First of all, it is true that the district court said that we failed to connect to the NDA. But what the district court meant is that the resolution of the claim doesn't require interpretation of the NDA, and that's not the standard under simula, point number one. Point number two, Judge, you raised earlier the question of they're alleging hacking. They're alleging something of a kind different from just misuse of information provided under the NDA. Number one, they've pleaded exactly the same case in France. I would like to give you two sides. So what? What difference does that make? You could proceed in two different forums at the same time if you want to. They've pleaded exactly the same allegations of hacking in France. So what? They could do that. And they said that they occurred by means of the access code provided under the NDA. Okay. Do you have a record reference for that? Yes, of course. Document 26-2 in the district court docket, that's a brief filed with the Paris Court of Appeal, and I'm citing to paragraphs 89 to 95. And I would actually point the court to paragraph 45 of the first amended complaint here. Paragraph 45 of the first amended complaint is the only paragraph that contains some factual allegations of what they mean by hacking. And the factual allegation is based, they quote, this brief filed with the Paris Court of Appeal. They cite paragraph 92 of this brief filed with the Paris Court of Appeal. What they forgot to what they omitted from the quote is the language of paragraph 92 of the French brief that says after accessing the application using the password provided by Telesocial at the time of the negotiations covered by the confidentiality agreement. That is the best example of creative pleading. They've excised the reference to the access code. There's a point of contract interpretation that you raised that I'd like to respond to very, very quickly. If you look at the definition of confidential information in the NDA, it covers all information of any kind in whatever form given during the discussions. And the discussions is a defined term. The discussions means the business discussion with regard to a possible contractual relationship. It's not a temporal definition. It's a definition based on subject matter, based on what the parties intended to accomplish. The business discussions with regard to a possible contractual relationship as set forth in Exhibit A. According to the First Amendment complaint, these discussions started in February. I'm citing to paragraph 29 of the First Amendment complaint. They started in February. They continued at a taut pace until July. The access code was given in April. It is covered. Furthermore, the purpose of the NDA is spelled out in Exhibit A. It says Orange wants the ability to evaluate the application, the service. In order to evaluate the service, you need access to the service, and the access code is what gave access to the service, what made performance under the NDA possible. So how can they now argue that the element that made performance under the NDA possible is not covered by the NDA, after telling the French court that it was imperative to have the NDA in place for the discussions to take place? Thank you. We thank both counsel for your help. Oh, I thought you were done. Just one last point. Thank you. If you look carefully at the First Amendment complaint, you will see that there is not a single factual allegation of access to the servers. I'm talking about the factual allegation, not simply saying Orange hacked. Not a single factual allegation of access to the servers. That's different and separate from allegations of access to the service, to the application itself. Not a single factual allegation. It's not enough to say Orange accessed our servers to evade a foreign selection clause. Thank you. Wait a minute. I have one more question. You may have it in your brief. A lot of these cases are decided on standard of review. And you may lose here and win when you come back up. If you do lose here, that's just the way our courts function. So standard of review becomes very important as to how we gauge your arguments and the outcome. But I didn't see in your briefs where you identified what you thought our standard of review is. This is a really ‑‑ Could you tell me first where it is in your brief? I don't have the brief in front of me, but I can respond to Your Honor. The only ‑‑ what Telesocial said in its opposition brief to the motion to dismiss is that the only issue before the district court, the only issue before the district court, was whether the dispute fell within the scope of the foreign selection clause. They said this on page 4 of their brief, footnote 3, which means that the standard of review here, you have done over review of contractual interpretation matters. Okay. So in your brief, you say you have set out that standard? I have to look back at the brief to say I ‑‑ Rules of Appellate Procedure 28 indicate that you are to set up the standard, that you want us to apply for the standard of review. I didn't find it. I was going to go back and look again. But it's your responsibility anyway. But had you ‑‑ if it's not there, that's your argument of what the standard of review is. My argument is that this ‑‑ it's only an issue of contractual interpretation. Telesocial made very clear the only issue before the district court is whether the dispute is covered by the foreign selection clause, nothing else. The other standards under Atlantic Marine are not in the case because the only thing that matters is whether it's covered by the dispute resolution clause. And this court has done over review of that. Okay. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Wallace, Nelson, Clifton